UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re Mansfield Boat and RV Storage, LLC | § § § | |
| Debtor, | § § | |
| HARLIN D. HALE, U.S. Bankruptcy Judge, | § § § | |
| Movant, | § § | |
| | § | CIVIL ACTION NO. 3:20-CV-1799-B |
| v. | § | (Bankr. Case No. 18-33926-HDH-7) |
| | § | |
| MANSFIELD BOAT AND RV STORAGE, LLC, and LARRY REYNOLDS, | § § § | |
| | § | |
| Respondent. | § | |

## ORDER TO SHOW CAUSE UNDER CRIMINAL RULE 42(A)

On July 20, 2020, the Court withdrew the reference to the bankruptcy court in this case for the limited purpose of conducting criminal contempt proceedings against Larry Reynolds. Doc. 2, Order, 1–2. This order is Mr. Larry Reynolds's notice under Federal Rule of Criminal Procedure 42(a)(1) that he shall be prosecuted for criminal contempt and that he must appear at the time and place specified below to show cause for why he should not be held in criminal contempt of court. The Court details the essential facts constituting the charged criminal contempt below. The Court also discusses the relevant safeguards available to Mr. Reynolds under Rule 42(a).

Mr. Reynolds shall provide the information requested by the Court below, **on or before August 27, 2020**. Further, the Court **ORDERS** that Mr. Reynolds's trial for criminal contempt shall begin at **9:00am on Monday, October 19, 2020**, or such later date as the Court may fix, before the

undersigned, in the Earle Cabell Federal Building, 1100 Commerce Street, Courtroom 1516, Dallas, Texas, 75242-1003.

A.      *Legal Standard for Criminal Contempt Under Rule 42(a)*

Under Federal Rule of Criminal Procedure 42(a), "[a]ny person who commits criminal contempt may be punished for that contempt after prosecution on notice." Fed. R. Crim. P. 42(a). The Court must provide notice "in open court, in an order to show cause, or in an arrest order." *Id.* 42(a)(1). Such notice must: "(A) state the time and place of the trial; (B) allow the defendant a reasonable time to prepare a defense; and (C) state the essential facts constituting the charged criminal contempt and describe it as such."

The controlling statute for criminal contempt is 18 U.S.C. § 401. The statute provides that courts "shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority" as, among other things, "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." § 401(3). There are three required elements that must be proved beyond a reasonable doubt to find a defendant guilty under this section: "(1) a reasonably specific order; (2) violation of the order; and (3) the willful intent to violate the order." *United States v. Allen*, 587 F.3d 246, 255 (5th Cir. 2009) (quoting *United States v. Landerman*, 109 F.3d 1053, 1068 (5th Cir. 1997)). In the Fifth Circuit, "[f]or a criminal contempt conviction to stand, the evidence . . . must show both a contemptuous act and a wilful, contumacious, or reckless state of mind.'" *Id.* (alterations in *Allen*) (original quote from *United States v. McCargo*, 783 F.2d 507, 510 (5th Cir. 1986)).

B.      *Essential Facts Constituting Charged Criminal Contempt*

As the charged contemptuous conduct here occurred in the presence of the bankruptcy court

and not before this Court, Rule 42(a) requires that the Court notify Mr. Reynolds of the essential facts constituting the charged criminal contempt. *See* Fed. R. Crim. P. 42(a)–(b). The Court draws on various orders of the bankruptcy court in recounting Mr. Reynolds's contemptuous conduct.

In all, the bankruptcy court found Mr. Reynolds in civil contempt seven times throughout the pendency of the bankruptcy proceeding. As background, Mansfield Boat and RV Storage, LLC (the "Debtor") filed a Chapter 11 petition on December 3, 2018. Order at 2, *In re Mansfield Boat & RV Storage, LLC* (Entered Aug. 22, 2019) No. 18-33926-hdh7, ECF No. 151 (referred to below as "Fourth Contempt Order"). Mr. Reynolds is the former owner and general manager of the Debtor. *Id.* When the Chapter 11 proceeding started, the Debtor had two primary assets—a pair of properties located in Tarrant County, Texas, which is where the storage facilities for the Debtor's business were located. *Id.* These properties were subject to a perfected first priority security interest held by Pender Capital Asset Based Lending I, LP ("Pender Capital"). *Id.*

The first signs of friction occurred early on in the bankruptcy proceeding. On December 11, 2018, the bankruptcy court held a hearing on the Debtor's motion to use cash collateral, including its accounts receivable, to make payroll and continue operation of its business. *Id.*; *see also* Motion at 2, *In re Mansfield Boat & RV Storage, LLC* (Filed Dec. 5, 2018) No. 18-33926-hdh7, ECF No. 7. Pender Capital objected to the Debtor's motion and asked the bankruptcy court to lift the automatic stay. Fourth Contempt Order at 2. Pender Capital expressed concerns that, based on Mr. Reynolds's misconduct in a prior Chapter 11 case, the Debtor, controlled by Mr. Reynolds, would misuse cash collateral to pay insiders and equity holders. *Id.* at 2 & n.2. The bankruptcy court entered an initial order approving the Debtor's use of cash collateral on an interim basis. *Id.* at 2. The court held a subsequent hearing on the cash collateral motion, after which it entered two orders: (1) an order

conditionally lifting the automatic stay; and (2) an order granting the Debtor's use of cash collateral on a final basis. *Id.* at 3. The latter order strictly limited the Debtor's use of cash collateral to specifically authorized expenditures. *Id.* It also explicitly prohibited the Debtor from making payments to its owners, for expense reimbursement or otherwise. *Id.* On March 5, 2019, due to the Debtor's failure to comply with the terms of the order conditioning the automatic stay, Pender Capital foreclosed on the Debtor's two properties. *Id.*

Also on March 5, 2019, Pender Capital filed a series of expedited motions based on the Debtor's failure to comply with the bankruptcy court's final cash-collateral order. *Id.* Pender Capital requested that the bankruptcy court require the Debtor to comply with the order and find the Debtor and its principals in civil contempt. *Id.* Pender Capital also requested sanctions against the Debtor. *Id.*

The bankruptcy court set a hearing for April 3, 2019, and ultimately entered its first civil contempt order. *Id.* at 4. Mr. Reynolds testified at the hearing that he took money from the Debtor's bank account to pay for numerous personal expenditures—as such, the court found that he had violated both the interim and final cash-collateral orders. *Id.* Specifically, Mr. Reynolds had used cash collateral to pay for business expenses for other non-Debtor entities; lawyers whose retention was not approved by the court; and other personal expenses (*e.g.*, payments on Mr. Reynolds's personal mortgage). *Id.* In all, Mr. Reynolds had taken $96,306 from the Debtor. *Id.* The bankruptcy court set a show-cause hearing for April 16, 2019, by when the court required Mr. Reynolds to repay this money or present a viable repayment plan. *Id.* The bankruptcy court also, on the motion of the United States Trustee, converted the Debtor's case to Chapter 7. *Id.*

On April 9, 2019, prior to the show-cause hearing, Pender Capital notified the bankruptcy

court that Mr. Reynolds had made another transfer from the Debtor's bank account on March 25, 2019, this time in the amount of $45,000. *Id.* at 4–5. As the bankruptcy court points out, the "timing of this transfer is significant" because it happened right after Pender Capital had filed its contempt motions. *Id.* at 5.

On April 16, 2019, at the show-cause hearing, Mr. Reynolds admitted that he had spent the $45,000 transferred from the debtor on personal expenses not authorized by the bankruptcy court. *Id.* Mr. Reynolds further testified that he planned to repay the funds under the terms of the first civil contempt order from various sources over the next ninety days. *Id.* These sources included: (1) a $25,000 share of Mr. Reynolds's late mother's probate estate; (2) proceeds from the sale of an Alaskan property owned by Mr. Reynolds's wife, which he expected to soon be under contract for $350,000; and (3) a new loan Mr. Reynolds acquired for the purchase of real estate for a new Alaskan business, but which Mr. Reynolds contended could be used to pay off this unrelated obligation. *Id.*

After the hearing the bankruptcy court entered its second civil contempt order. *Id.* (citing Order, *In re Mansfield Boat & RV Storage, LLC* (Entered April 24, 2019) No. 18-33926-hdh7, ECF No. 112). In this order, the court found that Mr. Reynolds had again violated the interim and final cash-collateral orders with the $45,000 transfer. *Id.* The court ordered Mr. Reynolds to pay $141,306 to the Chapter 7 Trustee and $29,994 to Pender Capital. *Id.* Further, the court ordered that each day Mr. Reynolds failed to pay these amounts would result in an additional sanction of $100 per day until the amounts were fully paid. *Id.* The court also required Mr. Reynolds to provide the Chapter 7 Trustee and Pender Capital with: (1) an accounting for all funds he removed from the Debtor's estate, including the disposition of such funds; and (2) copies of all pleadings filed in his mother's

probate proceedings. *Id.* at 5–6.

Next, on June 6, 2019, Pender Capital filed another civil-contempt motion, alleging that Mr. Reynolds had failed to provide the requisite accounting, as well as the filings from his mother's probate proceeding. *Id.* at 6. The Chapter 7 Trustee joined the motion. *Id.* at 6 n.14. Pender Capital also alleged in its motion that Mr. Reynolds improperly held himself out as a representative of the Debtor to local law enforcement. *Id.* at 6.

On July 1, 2020, the bankruptcy court held a hearing on this motion. *Id.* The court found that the accounting Mr. Reynolds had provided was "grossly insufficient," and that neither Pender Capital nor the Chapter 7 Trustee had received any evidence from Mr. Reynolds as to the disposition of the funds taken from the estate, as required by the second civil contempt order. *Id.* Further, when asked to respond to some of Pender Capital's allegations, Mr. Reynolds asserted his Fifth Amendment right against self-incrimination. *Id.* Based on Mr. Reynolds's invocation of his Fifth Amendment right, the court drew adverse inferences against Mr. Reynolds on the issues of (1) the disposition of funds taken from the Debtor's estate and (2) whether Mr. Reynolds held himself out as a representative of the Debtor to local police. *Id.* at 6–7.

After the hearing, the bankruptcy court entered its third civil contempt order. *Id.* at 7. In this order, the court gave Mr. Reynolds three days to provide Pender Capital and the Chapter 7 Trustee with copies of all pleadings from his mother's probate proceeding. *Id.* The court further ordered that Mr. Reynolds provide an accounting for the $110,00 transferred out of the Debtor's estate on March 6, 2019 and the additional $45,000 transferred out on March 25, 2019. *Id.* The court required that the accounting include information on the disposition of such funds—specifically, where they went and what they were used for. *Id.* Finally, Mr. Reynolds was required to provide an affidavit, by July

15, 2019, to the Chapter 7 Trustee and Pender Capital that explained the disposition of all other transfers in excess of $500 out of the Debtor's estate to or for the benefit of Mr. Reynolds. *Id.* Mr. Reynolds was required to supplement such information at the request of the Trustee or Pender Capital. *Id.*

On July 24, 2019, Pender Capital and the Chapter 7 Trustee filed a joint notice to the bankruptcy court, alleging that Mr. Reynolds had not complied with the third contempt order. *Id.* Specifically, the notice stated that Mr. Reynolds had failed to: (1) repay the amounts required by the second civil contempt order within the ninety-day period; (2) provide an appropriate accounting of funds as required by both the second and third civil contempt orders; and (3) provide an affidavit explaining the disposition of all other transfers of over $500 out of the Debtor's estate as required by the third contempt order. *Id.* at 7–8. Based on this joint notice, the bankruptcy court set a hearing for August 5, 2019, and Mr. Reynolds was ordered to appear. *Id.* at 8. However, two days prior to August 5, Mr. Reynolds filed a motion for a continuance, in which he represented that he was in Alaska and was unable to travel to Dallas due to health reasons. *Id.* The court denied his motion. *Id.*

At the August 5 hearing, the bankruptcy court heard evidence from Pender Capital on Mr. Reynolds's noncompliance with the second and third contempt orders. *Id.* For example, Pender Capital presented evidence showing that Mr. Reynolds' affidavit contained "glaring deficiencies," as it failed, for example, to explain the disposition of any transfers of over $500; that Mr. Reynolds failed to provide Pender Capital with supplemental information it requested on unexplained transfers; that Mr. Reynolds failed to account for, and explain the disposition of, the $110,00 and $45,000 transfers from the Debtor; and that Mr. Reynolds failed to provide all of the filings from his mother's probate

proceedings within three days of their filing on the docket in that matter. *Id.* at 8–10. The Chapter 7 Trustee also testified that he discovered, contrary to Mr. Reynolds's representations to the court, that there was not a pending offer for the purchase of his wife's Alaska property. *Id.* at 10. As recounted above, Mr. Reynolds had testified at the April 16 hearing that he intended to use proceeds from the sale of that property to make payments owed to Pender Capital and the Trustee. *Id.*

Based on this evidence, the bankruptcy court found Mr. Reynolds in civil contempt for the fourth time. *Id.* at 12. The court ordered Mr. Reynolds to cure the deficiencies in his compliance with the court's orders, as provided by Pender Capital in a letter to the court. *See id.* at 13 (citing Letter at 1–9, *In re Mansfield Boat & RV Storage, LLC* (Entered August 8, 2019) No. 18-33926-hdh7, ECF No. 148-1). The court gave Mr. Reynolds until August 30, 2019, to cure his deficiencies and provide the additional documentation and information request in Pender Capital's letter. *Id.*

Additionally, in the fourth civil contempt order, the court noted that it was "running out of options" to coerce Mr. Reynolds' compliance. *Id.* As stated above, the second civil contempt order provided that Mr. Reynolds was required to pay the specified amounts within ninety days or be subject to an additional $100 sanction per day "until all amounts (including all daily accruals) are paid in full." *Id.* (emphasis omitted). The court also warned Mr. Reynolds that, since entry of its first civil contempt order, the court had continued to notify him of its right to incarcerate him in order to comply with its orders. *Id.* While the court had not, to this point, invoked this right, the court required Mr. Reynolds to appear on September 19, 2019, to "show cause why he should not be subject to further sanctions, including but not limited to confinement," until he complied with court orders. *Id.*

At the September 19 show-cause hearing, the bankruptcy court found that Mr. Reynolds had

failed to adequately produced the required information and documentation as ordered. *See* Order at 2, *In re Mansfield Boat & RV Storage, LLC* (Entered December 17, 2019) No. 18-33926-hdh7, ECF No. 216 (referred to below as "Sixth Contempt Order"). The court proceeded to enter a bench warrant for Mr. Reynolds's arrest in order to coerce his compliance with the Fourth Contempt Order. *Id.*

On September 26, 2019, the bankruptcy court held another hearing to determine if Mr. Reynolds had complied with the Fourth Contempt Order. *Id.* Based on Mr. Reynolds's answers at that hearing, the court determined that it was appropriate to release him from custody. *Id.* While the court stated that Mr. Reynolds was still in civil contempt of court, the court found it prudent to release Mr. Reynolds so that he could take necessary actions to cure his noncompliance, such as by providing Pender Capital with outstanding documents and information. *Id.* at 2–3. The court set a status conference for October 10, 2019, to determine: (1) whether Mr. Reynolds had complied with Pender Capital's outstanding requests for information; and (2) the status of Mr. Reynolds's repayment of misappropriated estate funds. *Id.* at 3.

At the October 10 status conference, Mr. Reynolds appeared and submitted himself to questioning. *Id.* However, the court found that certain information remained outstanding. *Id.* Thus, the bankruptcy court entered its fifth civil contempt order, requiring Mr. Reynolds to produce the outstanding information by October 21, 2019, or the court would hold another show-cause hearing on October 23, 2019. *Id.* (citing Order, *In re Mansfield Boat & RV Storage, LLC* (Entered October 21, 2019) No. 18-33926-hdh7, ECF No. 202 (referred to below as "Fifth Contempt Order")). The court further ordered Mr. Reynolds to pay all outstanding amounts owed by October 31, 2019. *Id.* And if he failed to pay such amounts, the court warned that it would set a hearing to determine

whether Mr. Reynolds would be taken into custody for failure to pay. *Id.*

On October 23, 2019, Pender Capital informed the bankruptcy court that Mr. Reynolds had provided all the outstanding documentation and information, as required by the Fifth Contempt Order. *Id.* As such, Pender Capital represented that the October 23 hearing was not necessary. *Id.*

However, on November 5, 2019, the court issued yet another show-cause order, requiring Mr. Reynolds to explain why he should not be taken into custody for his failure to repay the misappropriated funds to the Chapter 7 Trustee, as well as his failure to pay the daily accruing civil contempt sanctions and funds owed to Pender Capital. *Id.* at 3–4. The court set a show-cause hearing for December 9, 2019. *Id.* at 4.

At the December 9 hearing, the court questioned Mr. Reynolds about his failure to pay the outstanding funds. *Id.* Specifically, the court asked Mr. Reynolds about the three sources of cash that Mr. Reynolds previously represented at the April 16, 2019 hearing that he could draw from: (1) a $25,000 share of his mother's probate estate; (2) $350,000 from the sale of his wife's Alaskan property; and (3) a loan he acquired related to a new Alaskan business he was forming. *Id.*

With respect to his mother's probate estate, Mr. Reynolds testified that he now only expected to receive $10,000 based on a deduction of debt he owed to his mother's estate. *Id.* The court found this testimony "plainly inconsistent" with Mr. Reynolds's previous testimony. *Id.* Moreover, the court found it "curious[]" that Mr. Reynolds did not previously testify that he owed $20,000 to his mother's estate. *Id.* Mr. Reynolds nonetheless represented that he could wire $10,000 from this source to the Chapter 7 Trustee within a day of the show-cause hearing. *Id.*

As for his wife's Alaskan property, Mr. Reynolds testified that Pender Capital's lien on the property was the "sole reason" he could not sell the property. *Id.* However, counsel for Pender Capital

stated to the court that Pender Capital had filed a release of its lien on November 27, 2019. *Id.* at 5. In response, Mr. Reynolds testified that the sale of the property could close by December 31, 2019. *Id.*

With respect to the business loan for his Alaskan venture, Mr. Reynolds testified that this source was no longer available as he had opted to close that business. *Id.* However, Mr. Reynolds testified that he planned to sell all of that business's inventory and fixtures, which he estimated to be worth a total of $1.4 million. *Id.* Mr. Reynolds testified that an auctioneer had already been hired for the sale and that it would occur within sixty days. *Id.*

Finally, Mr. Reynolds testified that he had a fourth source of income to repay the Chapter 7 Trustee. *Id.* Specifically, Mr. Reynolds testified that he was selling his residence in Alaska, and expected to receive $500,000 from the sale. *Id.* He expected the sale to close sometime in the first quarter of 2020. *Id.*

Following the hearing, the bankruptcy court issued its Sixth Contempt Order. *Id.* The court summarized that "Mr. Reynolds has made numerous promises of repayment to this Court, under oath over the past nine months. All ring hollow." *Id.* The court found Mr. Reynolds in civil contempt yet again, but it declined to imprison him in order to coerce him to remit the misappropriated funds. *Id.* at 6. Instead, based on the new facts and repayment timeline that Mr. Reynolds provided, the court set another show-cause hearing for January 21, 2020. *Id.* The court stated that at that hearing it would again consider whether to subject Mr. Reynolds to civil confinement for his failure to pay amounts previously ordered by the court. *Id.*

On January 29, 2020, the court held the show-cause hearing. Order at 2, *In re Mansfield Boat & RV Storage, LLC* (Entered March 18, 2020) No. 18-33926-hdh7, ECF No. 248 (referred to below

as the "Seventh Contempt Order"). At this hearing, Mr. Reynolds testified about the status of the various sources of funds he previously testified were available. *Id.* Specifically, Mr. Reynolds testified that with respect to his wife's property in Alaska, his attorney had a summary-judgment hearing in state court on February 3, 2020, to remove the last lien on that property. *Id.* The bankruptcy court noted that it did not believe that Mr. Reynolds had ever previously mentioned this lien to the court. *Id.* at 2 n.2. As for Mr. Reynolds personal property in Alaska, he expected that the sale would close in the next two to three weeks, and that Mr. Reynolds would receive $200,000 in cash from this sale (down from $500,000). *Id.* at 3. And on the sale of inventory from his Alaskan business, Mr. Reynolds testified that the auctioneer was in possession of the inventory and fixtures, but that the auction would not occur until March or April of 2020. *Id.* Finally, Mr. Reynolds testified that he had paid the Chapter 7 Trustee the $10,000 from his mother's probate estate. *Id.*

In light of this testimony, the court gave Mr. Reynolds another extension of time to repay the stolen funds; the court set another show-cause hearing for March 5, 2020. *Id.*

On February 28, 2020, Pender Capital filed a notice with the court, requesting additional sanctions against Mr. Reynolds. *Id.* In this notice, Pender Capital stated that Mr. Reynolds had violated the court's third civil contempt order by making transfers on behalf of the Debtor. *Id.* Pender Capital also alleged that Mr. Reynolds had made false and inconsistent statements to the court regarding his ownership in his personal residence in Alaska and his wife's ownership of the other Alaskan property. *Id.* The day before the March 5 show-cause hearing, Mr. Reynolds filed a motion for continuance. *Id.* Pender Capital objected, and the bankruptcy court denied the motion. *Id.*

On March 5, 2020, Mr. Reynolds did not appear for the hearing. *Id.* at 4. The bankruptcy court went ahead without him. *Id.* At the hearing, Pender Capital elaborated on the arguments it

made in its February 28 notice to the court. *Id.* Specifically, counsel for Pender Capital argued and presented evidence that: (1) Mr. Reynolds had executed and filed deeds conveying property to himself on behalf of the Debtor, in violation of the third civil contempt order; (2) Mr. Reynolds had not yet repaid the stolen funds nor the daily accruing civil contempt sanctions to the estate; (3) Mr. Reynolds had made false statements to the court about sources of funds he represented were available to him to repay the bankruptcy estate; and (4) Pender Capital should be entitled to attorneys' fees related to Mr. Reynolds's civil contempt matters. *Id.*

First, on the violation of the third civil contempt order, the bankruptcy court found that the evidence showed that Mr. Reynolds had executed and filed a quitclaim deed on October 2, 2019, transferring certain real property of the Debtor from the Debtor to himself. *Id.* Additionally on December 4, 2019 and December 5, 2019, Mr. Reynolds executed and filed three special warranty deeds, transferring the same or similar property of the Debtor to himself. *Id.* The bankruptcy court held that this directly violated the third civil contempt order, which provided that "Mr. Reynolds has no authority to act or speak for the Debtor and shall not act or speak for the Debtor or hold himself out as a representative or agent of the Debtor." *Id.* at 4–5.

Second, on the issue of repayment of stolen funds, the Chapter 7 Trustee confirmed that Mr. Reynolds had not yet repaid the amounts previously ordered by the Court, aside from the $10,000 from his mother's probate estate paid on January 29, 2020. *Id.* at 5. Although Mr. Reynolds was absent, he did not submit any evidence or response to the contrary, as permitted by the Court in its order denying Mr. Reynolds's motion to continue. *Id.*

Third, with respect to Pender Capital's allegations that Mr. Reynolds had made false or misleading statements related to the Alaskan properties, the court found that Mr. Reynolds had

misrepresented the ownership of both properties in previous hearings. *Id.* The court noted that Mr. Reynolds had testified on "numerous occasions" before the Court that his wife owned certain property in Alaska and that funds from the sale of such property would be available to repay the bankruptcy estate. *Id.* However, Pender Capital submitted evidence at the hearing that Mr. Reynolds's wife deeded her interest in the property to the Estate of Dr. Marcus Alexandre on April 13, 2018. *Id.* Further, the court found that Mr. Reynolds had wrongly led the court to believe that his attorney had filed a motion for summary judgment to remove a lien from that property in state court, when in fact the defendant in that matter had filed the motion. *Id.*

As for Mr. Reynolds's personal residence in Alaska, Pender Capital provided evidence that Mr. Reynolds had executed a quitclaim deed granting his 50% separate interest in the property to the Estate of Dr. Marcus Alexandre on July 15, 2015. *Id.* at 5–6. Pender Capital also produced evidence of an order from an Alaska state court that restrained Mr. Reynolds from disposing of any assets of the Estate of Dr. Alexandre. *Id.* at 6. The court thus found that Mr. Reynolds had falsely testified to the court on January 29, 2020, that the sale of his personal residence would close in a matter of weeks, and that the only impediments to such a sale were his lawyer's negotiations with the mortgage company. *Id.*

Finally, the court found Pender Capital's request for $89,336.69 in attorneys' fees incurred by Pender Capital from June 2019 to March 2020 in association with these civil contempt proceedings to be reasonable and appropriate. *Id.*

The bankruptcy court then issued its Seventh Contempt Order. *Id.* In the order, the court noted that it was "extremely concerned with the harm Mr. Reynolds continues to inflict upon the bankruptcy estate." *Id.* The court continued by noting that the "evidence at the Show Cause Hearing

-14-

not only shows that Mr. Reynolds has not repaid the stolen estate funds and sanctions this Court has previously ordered him to pay, but that Mr. Reynolds is blatantly disregarding the Court's orders—specifically the Third Civil Contempt Order—by executing and recording unauthorized deeds on behalf of the Debtor." *Id.* The court also found that the evidence suggested that "Mr. Reynolds has been perjuring himself to this Court about his sources of repayment for the stolen estate funds." *Id.* at 7. The court summed up by stating that "Mr. Reynolds has lost all credibility with the Court." *Id.*

The court specifically found Mr. Reynolds in civil contempt for the seventh time for: (1) his failure to repay amounts previously ordered by the Court; (2) his failure to appear at the March 16, 2020; and (3) his violation of the court's third civil contempt order. *Id.* Further, because monetary sanctions were ineffective in coercing Mr. Reynolds's compliance, the bankruptcy court ordered that Mr. Reynolds be incarcerated for the second time to coerce his compliance with the third civil contempt order. *Id.*[1]

Finally, on July 8, 2020, the bankruptcy court *sua sponte* recommended that this Court withdraw the reference in the bankruptcy proceeding for the limited purpose of considering criminal contempt proceedings and any other remedies deemed necessary and appropriate against Mr. Reynolds. *See* Doc. 1-1, Report & Recommendation, 1–2. On July 20, 2020, this Court withdrew the reference under 28 U.S.C. § 157(d) for such limited purpose. Doc. 2, Order, 1–2.

In sum, as detailed above, the above facts constitute the underlying criminally contemptuous

---

[1] The bankruptcy court noted that, at the time of its report and recommendation to this Court, Mr. Reynolds had not yet been placed in custody pursuant to its second arrest warrant for civil contempt due to delays associated with the COVID-19 pandemic. Doc. 1-1, Report & Recommendation, 3 n.1.

conduct with which Mr. Reynolds is charged. The bankruptcy court has issued numerous specific and unambiguous orders that Mr. Reynolds has continued to violate without apparent cause. Specifically, as the bankruptcy court recounted in its most recent civil contempt order, Mr. Reynolds has failed to repay misappropriated stolen estate funds and the daily accruing civil sanction that the bankruptcy court imposed in its second civil contempt order. Seventh Contempt Order, at 6. Additionally, Mr. Reynolds has violated the bankruptcy court's third civil contempt order, amongst other orders, by failing to comply with the accounting and informational requests therein and by executing and recording unauthorized deeds on behalf of the Debtor. *Id.* Mr. Reynolds has also failed to appear (or explain his failure to appear) before the bankruptcy court as ordered. *Id.* at 3 n.5 & 7; *see also* Order Denying Motion to Continue Hearing Scheduled for March 5, 2020, *In re Mansfield Boat & RV Storage, LLC* (Entered March 18, 2020) No. 18-33926-hdh7, ECF No. 249. Lesser sanctions imposed by the bankruptcy court have failed to coerce Mr. Reynolds's compliance. Moreover, the bankruptcy court has recently been presented with evidence that Mr. Reynolds has been perjuring himself in relation to his intention and ability to repay funds owed to the bankruptcy estate. Doc. 1-1, Report & Recommendation, 3.

C.      *Rule 42(a) Requirements*

The Court recognizes that Mr. Reynolds is entitled to the procedural safeguards set forth in Federal Rule of Criminal Procedure 42(a). Pursuant to Rule 42(a)(1)(C), the Court has already set forth the essential facts of his alleged criminal contempt. Further, pursuant to Rule 42(a)(1)(A), the Court **ORDERS** that Mr. Reynolds's trial for criminal contempt shall begin at **9:00am on Monday, October 19, 2020**, or such later date as the Court may fix, before the undersigned, in the Earle Cabell Federal Building, 1100 Commerce Street, Courtroom 1516, Dallas, Texas, 75242-1003.

**Further, <u>Mr. Reynolds is instructed to advise the Court in writing of the following</u>**: (1) whether he has retained counsel and the identity of said counsel or whether he needs counsel appointed; and (2) whether, and for what reason, he would need additional time to prepare a defense under Fed. R. Crim. P. 42(a)(1)(B). Mr. Reynolds shall provide this information **on or before August 27, 2020**.

Pursuant to Rule 42(a)(2), the Court formally requests that the U.S. Attorney's Office for the Northern District of Texas prosecute this alleged criminal contempt against Mr. Reynolds or to notify the Court if it declines to do so. Should U.S. Attorney's Office for the Norther District of Texas decline to prosecute Mr. Reynolds out of prosecutorial discretion or because of any actual or potential conflict of interest, that office shall do so by filing a motion **on or before August 27, 2020**, and the Court shall appoint another attorney to prosecute this matter.

Pursuant to Rule 42(a)(1), this Court has issued the instant Order to Show Cause but has the statutory authority to issue an arrest order.  The Court warns Mr. Reynolds that any further disobedience to any of the Court's Orders, including this Order to Show Cause, will result in an immediate arrest order for criminal contempt.

**IT IS THEREFORE ORDERED:**

(1)    The Clerk of the Court is directed to open a new criminal case in the Dallas Division of the Northern District of Texas, entitled *In re Larry Reynolds*;

(2)    The Clerk of the Court is directed to file the instant Order in this matter and in the new criminal case;

(3)    All future filings regarding this alleged criminal contempt shall be filed in *In re Larry Reynolds*;

(4)    Mr. Reynolds's trial for criminal contempt shall begin at **9:00am on Monday, October 19, 2020**, or such later date as the Court may fix, before the undersigned,

-17-

in the Earle Cabell Federal Building, 1100 Commerce Street, Courtroom 1516, Dallas, Texas, 75242-1003;

(5)     On or before August 27, 2020, the U.S. Attorney's Office for the Northern District of Texas shall file a motion in *In re Larry Reynolds* advising the Court if the Office declines to prosecute Mr. Reynolds;

(6)     On or before August 27, 2020, Mr. Reynolds will advise the Court in writing of the requested information. If Mr. Reynolds fails to submit a response, the Court will issue an arrest order;

(7)     The Clerk of Court shall send a copy of this Order to the U.S. Attorney's Office via ECF; and

(8)     The Clerk of the Court shall send a copy of this Order to Larry Reynolds by mail return receipt requested and via electronic mail to the following addresses:

Larry Reynolds
305 Smith St.
Mansfield, Texas 76063
Via U.S. Mail and Email: ljr4@sbcglobal.net

Larry Reynolds
6160 Deep Lake Dr.
Valdez, Alaska 99686.

Mansfield Boat & RV Storage, LLC
Attn: Larry Reynolds
605 Rutgers
Lancaster, TX 75134.


**SO ORDERED.**

**SIGNED: August 20, 2020.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE